No. 13-3792

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE SEVENTH CIRCUIT**

---

| | | |
|---|---|---|
| JOHN HALL, et al., | ) | |
| | ) | Appeal from the United |
| Plaintiffs-Appellants, | ) | States District Court for the |
| | ) | Northern District of Illinois |
| v. | ) | |
| | ) | District Court No. 12 C 6834 |
| CITY OF CHICAGO, et al., | ) | |
| | ) | Hon. Harry Leinenweber, |
| Defendants-Appellees. | ) | Judge Presiding |

---

### PLAINTIFFS-APPELLANTS' RESPONSE TO DEFENDANTS-APPELLEES' SUPPPLEMENTAL MOTION TO DISMISS APPEAL

---

Plaintiffs-Appellants, through counsel, respond to Defendants-Appellees'

Supplemental Motion to Dismiss as follows:

On April 17, 2014, Defendants-Appellees filed a document they have styled as a

"Supplemental Motion to Dismiss Plaintiffs' Appeal." Defendants claim that Plaintiffs'

appeal is now moot because the City has revised the police department's Special Order

concerning Contact Cards. Defendants' Motion, p. 2. In fact, the City's revisions to

Special Order S04-13-09 do not moot Plaintiffs' claims for at least two fundamental

reasons: (1) the revisions do not address one of Plaintiffs' central claims (a claim

dismissed by the district court)—namely, police officers' routine practice of extending

so-called "Investigatory Stops" beyond the time necessary to confirm or dispel the

suspicion that gave rise to the stop; and (2) the City's claim that its revision of Special

Order S04-13-09, in and of itself, renders Plaintiffs' claims moot ignores the pertinent legal test for establishing mootness.

## I.     Background

In this lawsuit, Plaintiffs have sought to enjoin the City from engaging in two unconstitutional practices: (1) detaining citizens without their consent for the purpose of filling out Contact Cards; and (2) extending the detentions of citizens detained for the purpose of filling out Contact Cards to conduct warrant checks. Dkt. 24, ¶ 1. The first challenged practice has two distinct prongs: (1) detaining individuals without reasonable suspicion for the purpose of filling out Contact Cards (during so-called "Citizen Encounters"); and (2) unreasonably prolonging stops predicated on reasonable suspicion (so-called "Investigatory Stops") beyond the time necessary to confirm or dispel the suspicion by routinely asking a series of 25-plus questions, many of which are wholly unrelated to the purpose of the stop, including questions pertaining to the subjects' tattoos, scars and employment status. See First Amended Complaint, Dkt. 24, p. 5, n. 1; Dkt. 24-1 (sample Contact Card).

This appeal challenges the district court's decision granting in part the Defendants' motion to dismiss. Dkt. 59. The district court dismissed all of Plaintiffs' claims other than those arising from stops that officers extended by holding onto Plaintiffs' identification cards while conducting a warrant check. Dkt. 59, p. 6 ("Except in situations involving the warrant searches, Plaintiffs have failed to allege that they were seized ... There are no allegations that—in situations other than the warrant searches—the Defendant Officers held onto Plaintiffs' identification longer than necessary to complete the Contact Cards.") Plaintiffs have filed this interlocutory appeal pursuant to 28 U.S.C. §1292(a) because the

district court's decision has permanently foreclosed Plaintiffs from obtaining the injunctive relief they have requested concerning involuntary detentions for the purpose of completing Contact Cards (whether such detention occurs during a "Citizen Encounter" or an "Investigatory Stop").

During the pendency of this appeal, the City has revised Special Order S04-13-09, which sets forth the circumstances under which Chicago police officers are to fill out Contact Cards and the procedures for doing so. The revised Order purportedly makes two relevant changes in City policy: (1) it states that police officers will no longer complete Contact Cards during "Citizen Encounters" (encounters with citizens that are not based on suspicion of criminal activity); and (2) it states that police officers may not extend "Investigatory Stops" for the purpose of conducting a warrant check. See, S.O. §§I(A), III.B. Notably, as discussed below, the revised Special Order does not change the City's policy requiring its officers to complete in full Contact Cards during "Investigatory Stops."

## II.     Misstatements of Fact by the City in Its Supplemental Motion to Dismiss

In its supplemental motion to dismiss, the City makes two blatant misstatements of fact. First, the City states incorrectly that the district court found "that plaintiffs sufficiently stated a claim where they alleged that the defendant officers ... continued investigatory stops longer than necessary to confirm or dispel their reasonable suspicion." Defendants' Motion, p. 3. Rather, the district court held that Plaintiffs could challenge *only* those stops during which police officers retained Plaintiffs' I.D. cards for the purpose of conducting warrant checks. Dkt. 59, p. 6 ("To the extent that police officers retained a citizen's identification while performing a warrant search, that citizen was

'seized' within the meaning of the Fourth Amendment. Except in situations involving the warrant searches, Plaintiffs have failed to allege that they were seized.") The district court decided that in all other circumstances the questioning associated with filling out a Contact Card was "consensual" and "voluntary" as a matter of law. Dkt. 59, p. 8-9. This is significant because there are two ways in which the City improperly extends Investigatory Stops—(1) by asking a series of 25-plus questions, many of which are unrelated to the purpose of the stop, and (2) by conducting warrant checks during these stops. The district court has permitted Plaintiffs to go forward only on claims related to warrant checks. In this appeal, Plaintiffs have asked this Court to address the district court's dismissal of claims related to the questioning associated with filling out Contact Cards, which unnecessarily and routinely prolong these stops in violation of the Fourth Amendment.

Second, the City tries to avoid review of its practices by claiming that Plaintiffs never requested from the district court injunctive relief on the City's practice of unreasonably extending Investigatory Stops by asking subjects a series of 25-plus questions, most of which are unrelated to the purpose of the stop. The City's claim is malarkey. Plaintiffs' Complaint clearly spelled out this claim:

> The Special Order authorizes the use of Contact Cards in two types of police-citizen interactions: (1) "Citizen Encounters" and (2) "Investigatory Street Stops." ... Plaintiffs are challenging the policy and/or practice of writing up of Contact Cards for both types of stops. For in both types of stops, the cards are written up without the individual's consent and extend the stop beyond its initial justification. In the case of an "Investigatory Street Stop," which requires the police to have reasonable suspicion, Plaintiffs acknowledge that the police are permitted to momentarily restrain a suspect involuntarily for purposes of confirming or dispelling the suspicion, but the detentions associated with the writing up of Contact Cards go well beyond that purpose.

Dkt. 24, p. 4-5. Determining whether the City's routine practice of prolonging "Investigatory Stops" to ask a series of 25-plus questions violates the Fourth Amendment is a pure legal question about which there is no factual dispute. Both the original and amended Special Order explicitly require police officers to fill out Contact Cards when they conduct "Investigatory Stops." S04-13-09 §III(B) ("Sworn members who conduct an Investigatory Stop that does not result in an arrest are required to complete a Contact Information Card.")[1] The 25-plus questions that officers are required to ask include personal information, including the subject's social security number, employment status, scars and tattoos, which (except in rare circumstances) is wholly unrelated to confirming or dispelling the suspicion that formed the basis for the stop. Plaintiffs' claim for injunctive relief concerning this practice was dismissed by the district court and is ripe for review by this Court.

### III. The City's Amended Order Does Not Address the Unreasonable Extension of Investigatory Stops for the Purpose of Filling Out Contact Cards.

Assuming *arguendo* that Defendants have effectively implemented the revised Special Order (a question on which Plaintiffs are entitled to discovery, as explained in §IV *infra*), the current appeal still is not moot. The amended Special Order does nothing to address Plaintiffs' claims concerning the unlawful use of Contact Cards during "Investigatory Stops."

---

[1] The requirement that officers complete Contact Cards in full during "Investigatory Stops" is set forth throughout the original and revised Special Order. Like the original Order, the revised Order (1) states that officers are to "complete as much of the card as possible." S04-13-09 §V(A)(3)(b); and (2) instructs supervisors that "improperly prepared contact cards" are to be "return[ed] ... back to the preparing sworn member to complete and properly enter the card into the Contact Information Database." S04-13-09 §V(C)(c).

The amended Special Order requires police officers to complete Contact Cards whenever they conduct an "Investigatory Stop."[2] S04-13-09 §III(B) ("Sworn members who conduct an Investigatory Stop that does not result in an arrest *are required to complete* a Contact Information Card.") (emphasis added).

The basis for Plaintiffs' claims concerning the use of Contact Cards during "Investigatory Stops" is that the questioning associated with filling out a Contact Card goes well beyond gathering information to confirm or dispel reasonable suspicion. A Contact Card consists of 25-plus questions, most of which are not even tangentially related to the purpose of the stop, including questions about the subject's place of employment, social security number, appearance, clothing, and any identifying tattoos and scars. See, Dkt. 24-1, sample Contact Card; and Dkt. 24, ¶18. Plaintiffs have alleged that the use of Contact Cards (whether or not accompanied by a warrant check) during "Investigatory Stops" violates the Fourth Amendment because it unreasonably extends the length of the detention beyond the time reasonably necessary to confirm or dispel the suspicion that legitimized the initiation of the stop. Dkt. 24, ¶17, n. 1.

Under the City's revised Special Order, police officers are still authorized (and indeed required) to compel citizens to answer the questions associated with filling out the Contact Card whenever an individual is stopped based upon reasonable suspicion, thereby resulting in routine unconstitutional detentions of citizens.

Moreover, the appeal is not moot because it is unclear how the revised Special Order will be applied in practice. The Order is silent concerning whether the questioning associated with filling out a Contact Card must be "voluntary" on the part of the citizen

---

[2]     An "Investigatory Stop" is defined in Chicago police General Order G04-03 as a stop "based on specific and articulable facts which, combined with rational inferences from these facts, give rise to reasonable articulable suspicion that criminal activity is afoot." G04-03, §IV.

stopped. The Order gives contradictory directives, stating in one instance that: "During an Investigatory Stop, the sworn member may only temporarily restrict a person's freedom of movement as long as reasonably necessary to dispel or confirm the member's reasonable articulable suspicion of criminal activity." In the same section, the Order instructs that "sworn members who conduct an Investigatory Stop that does not result in an arrest are required to complete a Contact Information Card." S04-13-09, §III.B.

Given that most of the questions on the Contact Card are unrelated to confirming or dispelling suspicion, requiring a citizen to answer these questions before permitting him to terminate the encounter with the officer would seem to run afoul of the instruction that the detention must last only "as long as reasonably necessary to dispel or confirm the member's reasonable articulable suspicion of criminal activity." *Id.*

## IV.    Defendants Ignore the Relevant Legal Standard for Establishing Mootness.

The City's decision to amend the Special Order is not sufficient in and of itself to moot Plaintiffs' request for injunctive relief here. Case law requires more than a mere decision to amend the complained-of policy. In *Friends of the Earth, Inc. v. Laidlaw Envtl. Services (TOC), Inc.*, 528 U.S. 167, 189 (2000), the Supreme Court explained that a "case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur," but the "'heavy burden of persuad[ing]' the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." (quoting *U. S. v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968). Similarly, in *Ragsdale v. Turnock*, 841 F.2d 1358, 1365 (7th Cir. 1988), this Court held that the voluntary cessation of putatively illegal conduct "render[s] a controversy moot where there is no

reasonable expectation that the putatively illegal conduct will be repeated, and there are no remaining effects of the alleged violation."

Accordingly, it is insufficient for the City to merely state, as it does here, that it has altered its Special Order to support its claim for mootness. Instead, a finding of mootness results only if the City can fulfill its "formidable burden" of showing that: (1) it is "absolutely clear" that another policy change "could not reasonably be expected" to occur (*Friends of the Earth* at 190); or (2) that "there is no reasonable expectation that the putatively illegal conduct will be repeated." *Ragsdale* at 1365. To date, the City has failed to meet either of these tests.

Plaintiffs are entitled to conduct discovery about whether the City has effectively implemented the revised Special Order in a way that meets its burden, especially in a situation where, as here, the City continues to insist that its practices are and were constitutional. See, Supplemental Motion to Dismiss, p. 3 ("plaintiffs' claims are, as a matter of well-settled law, insufficient to plead an unconstitutional seizure.")

For example, it goes without saying that the City's decision to alter its written policy is largely meaningless without adequate and effective notice to its own police officers. Accordingly, it is important to determine how, if at all, the City distributed the revised policy — *e.g*., at roll call, in writing, in daily newsletter, in CO books — and to whom — *e.g*., individual officers or by district. Relatedly, it is important to know what changes in training, if any, accompany the City's newly altered policy and whether the video encouraging officers to make such stops has been altered and/or discarded. See Dkt. 24, ¶ 6 (The video training materials the CPD uses to instruct its officers about the proper use of Contact Cards advise officers that Contact Cards are to be used to collect data on

people who "might commit a crime after the stop" and instruct officers to "prepare a Contact Card" on individuals even though "you are unable to link him to any criminal activity.")

In fact, the City fails to give any indication, let alone evidence, that it has undertaken any notice to its officers, altered its training or edited or discarded its video. Without such changes, there is no good reason to believe that it has met its burden of showing that the policy has in fact been altered in actual day-to-day practice and/or that it will not revert to its old practices.

## V.     Conclusion

The Defendants' arguments that this appeal should be dismissed on mootness grounds should be rejected. First, the revised Special Order does not address Plaintiffs' claim that the routine extension of "Investigatory Stops" for the purpose of asking subjects to series of 25-plus questions associated with filling out a Contact Card violates the Fourth Amendment. Second, the City has ignored the relevant legal standard for determining mootness, and fact questions remain concerning whether the City has adequately implemented its revised Special Order and whether it may revert to its old practices.

Accordingly, this motion to dismiss should be denied.

Respectfully submitted,


/s/ Mark G. Weinberg

/s/ Adele D. Nicholas
*Counsel for Plaintiffs-Appellants*

Mark G. Weinberg
3612 N. Tripp Ave.
Chicago, IL 60641
(773) 283-3913

Adele D. Nicholas
4510 N. Paulina Street, 3E
Chicago, Illinois 60640
847-361-3869

## CERTIFICATE OF SERVICE

I certify that on April 21, 2014, I electronically filed the foregoing with the Clerk

of the Court for the United States Court of Appeals for the Seventh Circuit by using the

CM/ECF system. I certify that all participants in the case are registered CM/ECF users

and that service will be accomplished by the CM/ECF system.


/s/Adele D. Nicholas


Adele D. Nicholas
4510 N. Paulina Street, 3E
Chicago, Illinois 60640
847-361-3869